Argued and submitted March 31, affirmed May 11, petition for review allowed
November 17, 2016 (360 Or 604)
See later issue Oregon Reports

OREGON CONNECTIONS ACADEMY,
an Oregon nonprofit corporation,
*Plaintiff-Respondent,*

*v.*

SCIO SCHOOL DISTRICT 95C,
a political subdivision of the State of Oregon,
*Defendant-Appellant.*

Linn County Circuit Court
14CV05408; A158611

374 P3d 962

J. Kevin Shuba argued the cause for appellant. With him on the opening brief was Garrett Hemann Robertson P.C. With him on the reply brief was Rebekah R. Jacobson.

Matthew D. Lowe argued the cause for respondent. With him on the brief was Jordan Ramis PC.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**GARRETT, J.**

Defendant, a school district, appeals a judgment granting declaratory relief to plaintiff, a charter school. The parties' dispute concerns the interpretation of Oregon's charter school law. In 2012, plaintiff requested that defendant renew their charter agreement as provided by statute. Defendant's board voted to approve the renewal, contingent on the successful negotiation of a new charter agreement. After the parties failed to negotiate an agreement, plaintiff solicited interest for sponsorship from other school districts. In response, defendant asserted that plaintiff was already bound to an additional term under the existing charter. Plaintiff brought this action seeking a declaration that it was not so bound and moved for summary judgment, which the trial court granted. We affirm.

It is helpful to begin with a brief overview of the relevant law. Oregon has a comprehensive statutory framework governing public charter schools. *See* ORS ch 338. A "public charter school" is defined as "an elementary or secondary school offering a comprehensive instructional program operating under a written agreement entered into between a sponsor and an applicant and operating pursuant to this chapter." ORS 338.005(3). A "sponsor" may be, among other entities, "[t]he board of the common school district or the union high school district in which the public charter school is located that has developed a written charter with an applicant to create a public charter school." ORS 338.005(5)(a).

ORS chapter 338 sets out the process for establishment of the charter school. Under ORS 338.045, the applicant first submits a written proposal to a school district board that includes information about such matters as the proposed school's philosophy, mission, curriculum, governance structure, and budget. The school district is required to hold a public hearing, weigh the proposal in light of statutory criteria, and either approve or reject the proposal. ORS 338.055. Approval triggers a process of negotiation and development of the actual "charter" that becomes the legal basis for the charter school's operation, as set out by ORS 338.065. Several procedural aspects of that statute are relevant to this appeal:

"(1)(a)   Upon approval of a proposal by a school district board under ORS 338.055, the school district board shall become the sponsor of the public charter school.

"* * * * *

"(2)   The sponsor and the applicant shall develop a written charter that contains the provisions of the proposal that have been duly approved by the sponsor and public charter school governing body. As provided by ORS 338.055(6), the sponsor and the applicant may agree to change elements of the proposal prior to incorporating them into the charter. The charter, when duly executed by the sponsor and the public charter school governing body, shall act as the legal authorization for the establishment of the public charter school. The charter shall be legally binding on both the sponsor and the public charter school governing body.

"* * * * *

"(4)(a)   The initial charter shall be in effect for a period of not more than five years and shall be renewed upon the authorization of the sponsor using the process established under this section.

"(b)   The first renewal of a charter shall be for the same time period as the initial charter.

"(c)   Subsequent renewals of a charter shall be for a minimum of five years but may not exceed 10 years.

"(5)(a)   The renewal of a charter shall use the process required by this section.

"(b)   The public charter school governing body shall submit a written renewal request to the sponsor for consideration at least 180 days prior to the expiration of the charter.

"(c)   Within 45 days after receiving a written renewal request from a public charter school governing body, the sponsor shall hold a public hearing regarding the request for renewal.

"(d)   Within 30 days after the public hearing, the sponsor shall approve the renewal of the charter or state in writing the reasons for denying the renewal of the charter.

"(e)   If the sponsor approves the renewal of the charter, the sponsor and the public charter school governing

body shall negotiate a new charter within 90 days after the date on which the sponsor approved the renewal of the charter unless the sponsor and the public charter school governing body agree to an extension of the time period. *Notwithstanding the time period specified in the charter, an expiring charter shall remain in effect until a new charter is negotiated.*"

ORS 338.065 (emphasis added). The parties' arguments on appeal, as discussed further below, concern competing interpretations of the italicized text added to the statute by the legislature in 2013. *See* Or Laws 2013, ch 136, § 1.

To summarize, the statute provides a process for, first, school district board approval of an applicant's *proposal* for a charter school. Following approval, the board becomes the "sponsor," which commences a process whereby the parties are required to "develop a written charter," which may contain different terms from those in the proposal. The statute makes explicit that it is the *charter* that is "legally binding" between the parties and acts as the "legal authorization for the establishment of the public charter school." The initial charter may last for no more than five years, and may be renewed for an identical period. Subsequent renewals may be for periods between five and 10 years. If the board approves the renewal request, the parties are required to "negotiate a new charter" within 90 days unless they agree to an extension. ORS 338.065(5)(e). The 2013 addition to that subsection further provides that, regardless of a charter's expiration date, "an expiring charter shall remain in effect until a new charter is negotiated." Plaintiff contends that that text pertains only to active and voluntary negotiations, whereas defendant contends that the text means that the charter must continue until the parties successfully negotiate a new charter.

The pertinent facts are not disputed. In 2005, defendant approved plaintiff's request for sponsorship, and the parties entered into a charter agreement for a five-year period that expired on June 30, 2010. In 2009, plaintiff requested renewal of the charter, defendant approved the renewal, and the parties entered into an amended charter agreement effective from July 1, 2010 through June 30, 2015.

In March 2012, well in advance of the expiration of the second charter agreement, plaintiff requested renewal for a 10-year period beginning July 1, 2015. Plaintiff's proposal included several proposed revisions to the charter. In May 2012, defendant's board approved the request, contingent on successful negotiation of a new charter.[1] The parties actively engaged in negotiations regarding the terms of a new charter through approximately June 2013. Plaintiff may have communicated a desire to continue negotiations as late as April 2014. The parties failed, however, to reach agreement on a new charter.

On May 1, 2014, plaintiff sent letters to eight school districts, including defendant, soliciting interest in sponsoring plaintiff's charter school beginning July 1, 2015, after the expiration of its 2010-2015 charter with defendant. In response to that letter, defendant asserted that the parties were already bound to an additional 10-year charter term from 2015 through 2025. Defendant acknowledged that the parties had failed to negotiate a new charter following the 2012 approval but cited the language of the 2013 amendment to ORS 338.065 to argue that "the parties' failure to negotiate a new 2015-2025 Charter Agreement is inconsequential as the 'expiring charter shall remain in effect until a new charter is negotiated.'" That is, according to defendant, the 2010-2015 charter would "simply remain in effect until the parties amend the Charter Agreement."

Plaintiff then brought this action for declaratory judgment under ORS 28.010, seeking a declaration that ORS 338.065(5)(e), including the 2013 amendment, "does not bind [plaintiff] to an additional ten (10) year contractual term with [defendant], running from July 1, 2015 to June 30, 2025, and that [plaintiff] is free to seek contractual relationships with other potential sponsoring school districts that will begin upon expiration of" the 2010-2015 charter. Defendant counterclaimed for declaratory and injunctive relief, seeking a declaration that, under ORS 338.065(5)(e),

---

[1] We rely on the minutes of the board meeting, which are part of the record and reflect that plaintiff's request for renewal was approved "contingent upon [charter] negotiations and terms." Moreover, defendant does not dispute that the board's May 2012 approval was contingent on successful negotiation of a new charter.

the parties' current charter "shall remain in effect" past its June 30, 2015, expiration date until the execution of a new charter agreement.

Plaintiff moved for summary judgment, which the trial court granted in a December 11, 2014, letter opinion that succinctly laid out the court's analysis:

> "[Defendant's] position is the language of the amended statute that reads '* * * expiring charter shall remain in effect until a new charter is negotiated,' means [plaintiff's] current charter must continue until such time as [the parties] successfully negotiate the 2015 to 2025 charter. [Plaintiff's] position is the provision applies only to parties who are actively and voluntarily engaging in negotiations, but who are approaching the expiration of their current charter. Per [plaintiff], the provision serves to prevent a lapse in services while a new agreement is being finalized.

> "* * *. Negotiations did fail. There was never a meeting of the minds between these parties, despite protracted negotiation efforts. [Defendant's] renewal approval was, by its own plain language, contingent on the parties being able to come to a mutual agreement. They did not. * * * The Court does not accept [defendant's] interpretation of the amended [statutory] language. The logical interpretation of the statute is that, in order to avoid an interruption in services, an existing charter can stay in force past its expiration date while the parties involved are voluntarily and actively winding up their productive negotiations. [Defendant's] interpretation would deprive [plaintiff] of any ability to negotiate new terms upon renewal and give [defendant] the unilateral ability to force [plaintiff] to perform under the existing contract indefinitely. This interpretation defies contract principles and is rejected."

As explained below, we agree with the trial court's construction of ORS 338.065(5)(e).

Defendant reasons as follows: (1) a school district's approval of a charter school's renewal request triggers a mandatory period of negotiation, and (2) the 2013 statutory amendment provides for the existing charter to "remain in effect until a new charter is negotiated." Thus, according to defendant, once it approved plaintiff's renewal request in May 2012, the 2010-2015 charter was, in effect, given

indefinite life until the parties reached agreement on a new charter. If the parties could not reach agreement, then the 2010-2015 charter would remain in effect through 2025, the end of the renewal period. Plaintiff's contrary view, and that of the trial court, is that the 2013 amendment is operative only where necessary to avoid an interruption in service and has no application where the parties abandoned their negotiations long before the expiration date of the existing charter.

The parties' dispute poses a question of statutory construction, which we resolve using the framework set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). That is, we examine the text of a statute in context, consider legislative history where it appears useful to our analysis, and, if the legislative intent remains unclear, turn to general maxims of statutory construction to resolve the uncertainty. *See id.* at 171-73 (explaining methodology). In so doing, "[o]ur goal is to determine the meaning of the statute that the legislature that enacted it most likely intended." *Halperin v. Pitts*, 352 Or 482, 486, 287 P3d 1069 (2012) (citing *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993)).

We begin, therefore, with the text and context of ORS 338.065. Again, subsection (5)(e) provides:

> "If the sponsor approves the renewal of the charter, the sponsor and the public charter school governing body shall negotiate a new charter within 90 days after the date on which the sponsor approved the renewal of the charter unless the sponsor and the public charter school governing body agree to an extension of the time period. Notwithstanding the time period specified in the charter, an expiring charter shall remain in effect until a new charter is negotiated."

Under defendant's construction, the concluding phrase, "an expiring charter shall remain in effect until a new charter is negotiated," can be read to mean that "an expiring charter shall remain in effect indefinitely, if a new charter is not negotiated." The difficulty with that construction is that it divorces the language from the language of

the preceding sentence. That preceding sentence contemplates a period of active negotiation following the school district's acceptance of a proposed renewal; it does not address the possibility that negotiations will be abandoned or that the parties will fail to negotiate a new charter. This particular subsection presumes success—or, at a minimum, ongoing effort. The language added to the subsection in 2013 should be understood in that context. That is, if the parties are engaged in productive negotiations, the charter school may legally continue in operation, even if the existing charter technically expires before the new charter is executed.

The legislative history further supports that construction. The 2013 amendment to ORS 338.065 was enacted by House Bill (HB) 2875. *See* Or Laws 2013, ch 136, § 1. The bill was first considered by the House Committee on Education, where Representative Julie Parrish, the bill's sponsor, described it as a "cleanup" measure to ensure that a school whose charter had lapsed while "still * * * in a negotiation window" with the sponsoring district could continue to operate until the parties reached an agreement on a new charter. Audio Recording, House Committee on Education, HB 2875, Mar 22, 2013, at 1:27:47 (testimony of Rep Julie Parrish), https://olis.leg.state.or.us (accessed Apr 11, 2016). At a later work session, HB 2875 was introduced as "[t]he bill that says if you get to the end of your charter contract, *and you're still negotiating the charter contract, you can keep operating your charter until you finish negotiating your charter contract.*" (Emphasis added.) Audio Recording, House Committee on Education, HB 2875, Apr 12, 2013, at 1:21:10 (statement of Rep Sara Gelser), https://olis.leg.state.or.us (accessed Apr 11, 2016). The committee voted to approve HB 2875 without any further discussion, and sent it to the House floor, where it passed unanimously.

Before the Senate Committee on Education and Workforce Development, Representative Parrish again testified that the purpose of HB 2875 was to promote educational continuity for children and to prevent charters from ceasing to exist "while the grownups in the room are just

trying to settle out the details of a new charter." Audio Recording, Senate Committee on Education and Workforce Development, HB 2875, Apr 30, 2013, at 36:21 (statement of Rep Julie Parrish), https://olis.leg.state.or.us (accessed Apr 11, 2016). Parrish further explained:

> "So *at least while* * * * *the charter [school] and the sponsor are going through that process*, * * * we don't want to see kids get bounced around, and not have the school function, and people lose their jobs because they can't come to an agreement on a charter. We want to give them more time to do that, but keep school moving."

*Id.* at 37:05 (emphasis added).

Senator Beyer questioned whether HB 2875 would have the effect of eliminating a charter school's leverage during charter negotiations in a situation where, as here, a school sought renewal on terms different from those in the expiring charter. *Id.* at 37:55. Parrish responded that "[t]he goal is that you don't want to hurt the people who need the service, but you want to make sure that both people can continue to come to the table and have the conversation." *Id.* at 38:45. The committee also heard testimony from Kaaren Heikes from the Northwest Center for Educational Options. Heikes testified that renewal is "not merely a contract extension," but, rather, a process by which the charter school and sponsoring district agree to renew the relationship and then, negotiate a contract. *Id.* at 42:10. Heikes further explained that, during charter negotiations, "the reality is the district is in the power position with the charter school. They always are. And that's just the way it's set up." *Id.* at 42:50. According to Heikes, HB 2875 would protect charter schools that otherwise "feel pressure * * * to either accept terms that aren't acceptable to them, or to close their doors" by creating a "longer timeframe to mutually agree to new terms." *Id.* at 43:41.

The legislative history thus confirms that the purpose of the 2013 amendment was to benefit charter schools and their students by ensuring that their charters would not lapse, threatening the schools' ability to operate, while the details of a new charter agreement were being negotiated.

In short, the text, context, and legislative history support the construction urged by plaintiff and adopted by the trial court.[2] In contrast, defendant's construction suffers from several flaws. First, it attributes great significance to the school district's approval of a renewal request. But the statute assigns no particular legal significance to that event, other than as a condition precedent to the negotiation and execution of a charter agreement. The statute does not say that, upon the board's approval, the parties are bound to each other for the term of the proposed renewal. The parties are, instead, bound to enter into negotiations to execute a charter, which becomes the legally binding agreement. Implicit in the concept of negotiation is that the parties might fail to reach a final agreement. The statute manifests no intention to bind the parties to a future relationship based only on the approval of a "proposal" and in the absence of a final agreement. Nor does the legislative history suggest any such intention.

Second, if the existing charter is to take on indefinite life at the moment that the school district approves a renewal, it is difficult to see what purpose is served by the 90-day negotiation period in the statute. Furthermore, defendant's reading would create a bargaining imbalance that contradicts the legislature's intention. If the terms of the existing charter became locked in for the entirety of the renewal period upon the district's approval of the renewal request, the district would have no incentive to agree to any less favorable terms in the new agreement. A charter school seeking renewal but on different terms would be in an untenable situation; it could either cease operations or propose a set of changes to the district, which would have no incentive to accept them, as it could simply fall back on the terms of the existing charter. We see no evidence that the legislature intended to place the parties in such an asymmetrical bargaining position.

---

[2] In this case, the parties' efforts to negotiate a charter failed before the existing charter expired and, as a consequence, the existing charter was never extended by operation of the 2013 amendment. As a result, we are not called upon to address, and do not address, the length of time an expired charter extended by operation of the 2013 amendment remains in effect following the failure of negotiations.

For the foregoing reasons, we conclude that the trial court did not err in granting plaintiff's motion for summary judgment.

Affirmed.